UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------x
TAMIKA M. KEITT,

               Plaintiff,

     -against-

JO ANNE B. BARNHART,
Commissioner of Social Security,

               Defendant.
---------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 04-CV-1347 (FB)

*Appearances:*
*For the Plaintiff:*
HERBERT S. FORSMITH
26 Broadway, 17th Fl.
New York, NY 10004

*For the Defendant:*
ROSYLN R. MAUSKOPF
United States Attorney
Eastern District of New York
By:   JOHN M. KELLY
       Special Assistant U. S. Attorney
One Pierrepont Plaza, 14th Fl.
Brooklyn, NY 11201

**BLOCK, District Judge:**

       Plaintiff, Tamika Keitt ("Keitt"), seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Both parties move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Because the Administrative Law Judge ("ALJ") applied the incorrect legal standard in determining whether Keitt met the definition of mental retardation as set forth in the list of impairments presumed severe enough to render one disabled, the case is remanded for further proceedings.

1

I.

The following recitation of facts is taken from the Administrative Record ("A.R."). Keitt applied for DIB and SSI on August 23, 1999. The Commissioner denied her application as an initial matter and on reconsideration. She requested a hearing before an administrative law judge ("ALJ"), which was held on August 29, 2000. The medical evidence presented at the at the hearing consisted of Keitt's medical records and reports from various consulting physicans. In addition, Keitt testified at the hearing.

A. Medical Evidence

Between September 1995 and January 2000, Keitt was treated on several occasions for respiratory problems, for which she received diagnoses of upper respiratory infection, costochondritis, allergic rhinitis, and asthma.

On September 9, 1999, she underwent physical examinations by two consulting physicians for the Social Security Administration. Dr. Mohammad Khattak diagnosed lower back pain and obesity. Nonetheless, he assessed her as being able to hear, speak, sit, stand, bend, walk, reach, lift, and carry, although he cautioned that she should lose weight. Dr. Howard Finger diagnosed chronic bronchial asthma with mild current symptoms, chronic lower back derangement, obesity, and a history of learning disorder. Dr. Finger opined that she was mildly limited in the duration of time that she could sit and stand, mildly to moderately limited in the distance she could walk, and mildly to moderately limited in her ability to lift and carry.

On that same day, Keitt also underwent intelligence testing with Robin

Bryant, Ph.D, a consulting psychologist for the Social Security Administration. The tests revealed a sixth-grade reading level, a verbal IQ of 77, a performance IQ of 70, and a full-scale IQ of 73, all within the borderline level of intelligence. Based on those scores, Dr. Bryant opined that Keitt suffered from some reading delays and that her "basic competence and intellectual, personal and social skills" were "moderately impaired[.]" A.R. at 112. Dr. Bryant also opined that her ability to be self-sufficient in an age-appropriate manner was moderately impaired, but that she could handle some types of simple and repetitive tasks. Dr. Bryant assessed her overall ability to understand, carry out and remember instructions in a work setting as fair.

On September 22, 1999, Dr. T. Seok, a non-examining state-agency consulting physician, provided a functional assessment of Keitt's physical abilities. He opined that she had no exertional, postural, manipulative, visual or communicative limitations. The only limitation he indicated was that she should avoid concentrated exposure to fumes, odors, dusts, gasses and poor ventilation. On December 21, 1999, another state-agency medical consultant reviewed and affirmed Dr. Seok's assessment.

On December 20, 1999, a non-examining state-agency consulting physician, whose name is not apparent from the record, provided a functional assessment of Keitt's mental abilities. The assessment noted that she was moderately limited in her "ability to carry out detailed instructions[,]" A.R. at 134, but that she was not significantly limited in any other area. On that same day, another state-agency medical consultant reviewed and affirmed the assessment.

### B. Other Evidence

In her application for benefits, Keitt asserted that she had worked as a mail handler, a sales representative, and a cashier. She reported that her work as a mail handler involved up to one hour of walking, two hours of standing, and eight hours of sitting per day, and required frequent bending and lifting and carrying up to ten pounds. Her work as a sales representative involved eight hours of sitting per day, with no bending or lifting. Her work as a cashier at McDonald's and a church involved up to five hours of walking, five hours of standing, and one hour of sitting each day, and required occasional bending, lifting, and carrying up to ten pounds.

Keitt testified that she has asthma, for which she uses a nebulizer two or three times a week when she has an attack. She also testified that she has back pain due to a 1999 injury, that she injured her knee in 1999, that she has difficulty concentrating and sleeping, and that she has difficulty walking, bending, and lifting, as well as sitting and standing for long periods. She testified that she suffers from migraines, for which she takes medication.

With respect to her daily activities, Keitt testified that she spends time with her fiancé, reads and watches television and visits with friends, using public transportation unaccompanied. She also testified that she shops, cooks and performs light cleaning tasks, including washing dishes and folding clothes.

### C. The ALJ's Decision

The ALJ rendered a decision on February 9, 2001. The ALJ found that Keitt had not engaged in substantial gainful activity since June 15, 1999. The ALJ further found

that Keitt's low IQ, asthma, back pain and headaches, viewed in combination, constituted a severe impairment. He concluded, however, that her impairment was not one of those listed in the Commissioner's regulations as giving rise to a presumption of disability. Specifically, he determined that her impairment did not satisfy a listing for mental retardation because, based on her past history of work and her ability to carry out activities of daily living, her "adaptive functioning prior to her turning 22 showed that she could work, irrespective of the lowered performance IQ score." A.R. at 31. The ALJ then found that, based on the medical evidence, Keitt's impairments did not prevent her from performing her past relevant work as a mail handler or cashier. Accordingly, the ALJ concluded that Keitt was not disabled, and therefore was not eligible for DIB or SSI. *See* A.R. at 30-35 (ALJ's Decision).

Keitt sought review of the ALJ's decision with the Commissioner's Appeals Council; on September 19, 2003, the Appeals Council summarily denied her request for review. On January 21, 2004, the Appeals Council vacated its September 19, 2003 denial to "consider further arguments," A.R. at 5, but again summarily denied Keitt's request for review, thereby rendering final the Commissioner's decision to deny benefits. Keitt now asks the Court to review the Commissioner's final decision.

## II.

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). The

former determination requires the Court to ask, *inter alia*, whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Secretary of Health & Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (citation and internal quotation marks omitted). The latter determination requires the Court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)) (internal quotation marks omitted).

An ALJ must evaluate a disability claim in accordance with a well-established, one-to-five-step sequential process; "[t]he answer to each step's question determines whether the next step need be reached." *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). Only the first four steps are relevant here:

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity". . . .
>
> At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities". . . .
>
> At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. . . .
>
> If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. . . .

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. §§ 404.1520(b-f), 416.920(b-f)); *see also Jasinski v. Barnhart*, 341 F.3d 182, 183-84 (2d Cir. 2003).[1]

The ALJ completed steps one through three of the required analysis by finding (1) that Keitt had not engaged in substantial gainful activity since June 15, 1999; (2) that Keitt's impairments that, viewed in combination, were severe; and (3) that those impairments – lowered IQ, asthma, back pain and headaches – were not among those on the list of impairments presumed to be disabling. The ALJ then turned to step four and determined that Keitt's limitations did not prevent her from doing her previous work as a mail handler or cashier. Keitt takes issue with the ALJ's determination at step three, arguing that she is disabled under listing 12.05(C) due to mental retardation. *See* Section 12.05 of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpart P, Appendix 1.

## A. Listing 12.05(C)

For purposes of Social Security benefits, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." *Id.* Mental retardation is established when one of four sets of criteria are met; at issue here are the criteria contained in section12.05(C), which requires both (1) "[a] valid verbal, performance, or full

---

[1] "If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called 'vocational factors' (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy." *Barnhart v. Thomas*, 540 U.S. at 24-25.

7

scale IQ of 60 through 70" and (2) "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.* A claimant who is found to meet these requirements is presumed disabled at step three without further inquiry. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

With respect to the first requirement, the Commissioner does not dispute that Keitt's performance IQ of 70 places her within the range set forth in section 12.05(C).[2] With respect to the second requirement, Keitt contends that the ALJ misapplied the law in analyzing whether she had a significant work-related limitation of function in addition to her low IQ. She argues that in analyzing whether she had such limitation, the appropriate inquiry was whether her impairments other than her low IQ – asthma, back pain and migraines – were "severe," as that term is understood in the context of the second step of the Commissioner's sequential analysis, and not whether her past history of work and her capacity to carry out activities of daily living showed that she was able to resume work. The Commissioner responds that the ALJ appropriately determined that Keitt did not meet the second requirement of listing 12.05(C) based on her past history of work and ability to carry out activities of daily living. *See* [Comm'r's] Reply Mem. at 1-4.

The Second Circuit has yet to answer the question of what test should be utilized in determining whether, with respect to the second requirement of 12.05(C), a claimant's "physical or other mental impairment" other than his or her low IQ imposes a

---

[2] Although Dr. Bryant assessed Keitt as having verbal and full-scale IQ scores above 70, "in cases where more than one IQ is customarily derived from the test administered, i.e., where verbal, performance, and full-scale IQs are provided . . ., the lowest of these is used in conjunction with listing 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D).

8

significant work-related limitation. Other circuit courts are divided on this issue. The First, Eighth and Tenth circuits have taken the approach that Keitt advocates here, holding that the limitation other than low IQ is "significant" if the claimant suffers from an additional physical or other mental impairment that is "severe," as that term is defined at step two of the Commissioner's sequential analysis. *See Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997); *Warren v. Shalala*, 29 F.3d 1287, 1291 (8th Cir. 1994); *Nieves v. Sec. Health and Human Servs.*, 775 F.2d 12, 14 (1st Cir.1985). This is not an exacting requirement; as the Second Circuit has held in analyzing step-two cases, the step-two severity test "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).

The Eleventh Circuit has rejected the severity test for purposes of ascertaining mental retardation under section 12.05(C), holding instead that impairments, in addition to low IQ, meet that section's second requirement if they impose a limitation of function that is more than *de minimis* but less than severe.³ *See Edwards v. Heckler*, 755 F.2d 1513 (11th Cir.1985). By contrast, the Fourth Circuit has applied a more rigorous standard, concluding that a claimant is significantly limited within the meaning of Section 12.05(C) only when it is shown that he or she cannot perform his or her prior relevant work. *See Flowers v. U.S. Dep't of Health and Human Servs.*, 904 F.2d 211, 214 (4th Cir. 1990).

Although ALJ's decision did not expressly articulate which of these tests it was applying, the ALJ's analysis was analogous to the test adopted by the Fourth Circuit,

---

³ Since the step-two severity test functions simply to weed out *de minimis* claims, *see Dixon*, 54 F.3d at 1030, it is arguable that it is not possible for a limitation to be more than *de minimis* and yet not be "severe" for purposes of step two.

since the ALJ based its determination on whether, in light of her past history of work and capacity to carry out activities of daily living, Keitt was able to resume work. District courts in this circuit that have addressed the issue have, however, followed the approach taken by the First, Eighth and Tenth Circuits. *See Aviles v. Barnhart*, 2004 WL 1146055 (E.D.N.Y. May 11, 2004); *Baneky v. Apfel*, 997 F. Supp. 543 (S.D.N.Y.1998); *Velezquez v. Chater*, 1996 WL 107109 (W.D.N.Y. Mar. 6, 1996). This Court agrees with those courts that the correct standard for determining whether an impairment in addition to low IQ imposes a significant work-related limitation under Section 12.05(C) is the severity test. As Judge Kaplan explained in his comprehensive and well-reasoned decision in *Baneky*:

> The actual wording of the second prong of Section 12.05(c), "a physical or other mental impairment imposing additional and significant work-related limitations of function," is essentially the same as that of the step two severity regulation, which asks whether the claimant has "any impairment(s) which significantly limits [his or her] physical or mental ability to do basic work activities." Both regulations depend upon whether the claimant's ability to work is limited to a significant degree, strongly suggesting a similar construction. Further, a contrary interpretation would be inconsistent with the existence of Section 12.05(c) in the first place. Section 12.05(c) essentially provides that those individuals with IQ's in the range of 60 through 70 may be found disabled upon a showing that they have an additional limitation that imposes a significant limitation on their ability to work. If "significant" requires something more than "severity," however, then there would be little point in having a special category for those with limited IQ's. If the "additional" limitation must satisfy more than the second step of the five-step analysis, then a qualifying "additional" limitation often would be sufficient in its own right to support a finding of disability, rendering Section 12.05(c)'s provisions for those with low IQ's superfluous.

*Baneky*, 997 F. Supp at 546 (alterations in original; internal footnotes omitted). Thus, in

analyzing the significance of Keitt's limitations other than her low IQ based upon her ability to resume work, rather than under the severity test, the ALJ misapplied the law.

In light of this circumstance, the Court cannot be certain whether or not the Commissioner's ultimate conclusion that Keitt was not disabled is supported by substantial evidence. See *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."). Nonetheless, "[w]here application of the correct legal standard could lead to only one conclusion, [the Court] need not remand." *Id.* Keitt argues that remand is not required because analysis of the second requirement of listing 12.05(C) could lead only to the conclusion that Keitt's limitations other than her low IQ imposed an additional and significant work-related limitation of function.

On this record, however, the Court cannot conclude with certainty whether or not Keitt's asthma, back pain and migraines present more than a *de minimis* limitation, and thus satisfy the severity test. Although the ALJ determined at step two that Keitt's "conditions are 'severe[,]'" A.R. at 34, that determination was based upon all of her limitations, including her low IQ, and thus does not answer the question of whether, absent consideration of her low IQ, her other limitations would meet the severity test. Similarly, because the ALJ's analysis of the medical and testimonial evidence was undertaken in the context of the fourth step of the disability determination, and thus concerned Keitt's residual functional capacity in light of both her IQ and other claimed limitations, that

11

analysis is not helpful in ascertaining which particular limitation(s) the ALJ found to be more than *de minimis*. For these reasons, the Court cannot conclude whether the limitations identified by Keitt, beyond her low IQ, would satisfy the second prong of Section 12.05(c).

**B. Remand**

Remand for further development of the record is appropriate when "there are gaps in the administrative record or the ALJ has applied an improper legal standard." *Parker v. Harris*, 626 F.2d 225 (2d Cir. 1980); *see also Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999). Remand is particularly appropriate where additional findings or explanation will elucidate the rationale for the ALJ's decision. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996). Here, remand is necessary for the Commissioner to apply the correct legal standard and make a specific finding regarding whether, applying the severity test, Keitt's additional limitations satisfy the second requirement of listing 12.05(C). *See Aviles*, 2004 WL 1146055 at *7 (remanding for determination of "whether any of plaintiff's limitations, except for his low IQ, satisfy the second element of Listing 12.05(C)"); *Baneky*, 997 F. Supp. at 547 (where the court could not determine from the record whether "the limitations identified by plaintiff, beyond his low IQ, satisf[y] the second prong of Section 12.05(c)," remanding "for the Commissioner to make a specific finding in that regard.").

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision denying Keitt's applications for DIB and SSI is reversed. The case is remanded to the ALJ for further proceedings in accordance with this Memorandum and Order.

**SO ORDERED.**

FREDERIC BLOCK
United States District Judge

Brooklyn, New York
May 27, 2005